DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALBERT McKINSTRY ) | |
| ) | CASE NO. 3:03CV7620 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| REXAM BEVERAGE CAN COMPANY ) | (Resolving Doc. No. 23) |
| ) | |
| Defendant(s). ) | |
| ) | |

## I. Introduction

Before the court is Defendant Rexam Beverage Can Company's ("Rexam") Motion for Summary Judgment (Doc. No. 23), which has been fully briefed (Doc. Nos. 26 and 32). On September 29, 2003, Rexam terminated Plaintiff Albert McKinstry, a forklift operator of 22 years, for alleged job performance issues relating to company policy and work attendance. McKinstry, however, felt his termination was racially motivated and on October 23, 2003, commenced this action against Rexam for racial discrimination in violation of 42 U.S.C. § 1981 and Ohio Rev. Code § 4112.01 et seq.

Rexam has moved for summary judgement on these claims. Rexam maintains that under the McDonnell Douglas criteria for establishing a discrimination claim, McKinstry cannot establish a prima facie case because he was unqualified for his position. Additionally, Rexam argues McKinstry's work performance and attendance present a legitimate non-discriminatory reason for his termination and that McKinstry has not presented any evidence to show that such reasoning was a pretext for

(3:03CV7620)

discrimination. Finally, Rexam contends that McKinstry cannot allege his public policy claims or claims for punitive damages.

Ultimately, summary judgment is not appropriate in the present case, due to the existence of genuine issues of material fact regarding the circumstances surrounding McKinstry's termination, Rexam's standard attendance policy and whether other similarly-situated, non-minority employees were treated differently than McKinstry. Furthermore, on the issue of punitive damages, genuine issues exist surrounding the nature of Rexam's conduct and the number of employees at Rexam, which significantly impact the determination of any possible award. In terms of McKinstry's public policy argument, however, because McKinstry did not allege his public policy arguments within his amended complaint, these public policy claims will not be allowed in the present case. Defendant's Motion for Summary Judgment is DENIED.

## II. Background

On January 1, 1981, McKinstry was hired by Strohs, Inc. as a forklift driver at their Fremont, Ohio plant. Strohs, Inc. owned the Fremont plant from 1979 until 1986, when American National Can Inc. ("ANC") purchased the plant. In July 2000, Rexam PLC purchased ANC and as part of the acquisition, acquired the Fremont plant. Defendant Rexam Beverage Can Company is a wholly owned subsidiary of Rexam Beverage Can Americas, which, in turn, is a wholly owned subsidiary of Rexam PLC, a London based company. However, despite the numerous changes in ownership of the Fremont plaint, McKinstry worked continuously as a fork lift operator from 1982 until his termination on September 29, 2003.

(3:03CV7620)

From 1982 through September 2003, McKinstry received numerous verbal and written warnings for safety, attendance and drug use from his supervisors. However, despite these problems, McKinstry had received favorable performance appraisals from Rexam as late as January 15, 2003.[1] However, after the January 15, 2003 performance appraisal, McKinstry received several more warnings regarding his work performance. Specifically, on March 1, 2003, McKinstry received a warning for not following proper policy for handling returned goods. On April 18, 2003, McKinstry received a one-day suspension for failure to fill out the required Preventative Maintenance ("PM") forms. On May 8, 2003, McKinstry received a warning for not wearing a seat belt while driving a forklift, in violation of Rexam's safety procedures.

Then, on September 1-2, 2003, McKinstry failed to show up for work without giving Rexam notice. When confronted, McKinstry told his supervisors he had a physician's note excusing him from work due to an eye condition. On September 4, 2003, Rexam received a note for Dr. Robert G. Neville, McKinstry's eye physician, excusing him from work the previous days. Dr. Neville diagnosed McKinstry with disciforme keratisis, a condition which greatly reduced his eyesight and rendered him incapable of driving a fork lift. McKinstry returned to work on September 4, 2003 and was given sorting work.

On September 4, 2003, McKinstry met with plant manager Troy Wildermuth and human resources manager Jeff Hill, to discuss his work performance issues. According to Rexam, during this

---

[1] According to McKinstry's personnel file, which spans his employment with Strohs Inc, ANC and Rexam, McKinstry received 31 citations concerning his job performance from 1982-2002. These citations primarily involve attendance and safety issues, as well as a failed random drug test on April 4, 2000.

3

(3:03CV7620)

meeting McKinstry was told that Rexam would no longer take facsimlies or telephone messages concerning his absences from work and that he had to personally notify either Hill or Randy Rogers, his supervisor, when he was going to be absent. On September 5, 2003, McKinstry received a written memorandum of the September 4, 2003 meeting, which conveyed the contents of the meeting and informed McKinstry that failure to improve his work performance would result in further disciplinary action, including termination.

McKinstry was scheduled for work on Sunday, September 28, 2003. However, on September 26, 2003, McKinstry called Hill, requesting to take September 28, 2003 off to visit his ailing father-in-law. Hill told McKinstry that he needed to get permission from Mr. Rogers, his direct supervisor at Rexam. When McKinstry called Rogers, Rogers told him that he would not be able to take September 28, 2003 off and would be on sorting duty. Later that day, McKinstry called Hill to discuss his conversation with Rogers. Hill, again, conveyed to McKinstry that he needed to come to work, and, according to Hill, McKinstry said he would be at work on September 28, 2003.

At approximately 2:03 a.m. on September 28, 2003, McKinstry left a voicemail message at Rexam stating he would not be coming into work because the condition of his father-in-law had worsened. On September 28, 2003, McKinstry did not come in for work and made no other efforts to contact anyone at Rexam. Rexam alleges, that McKinstry's message was not discovered until approximately 7:30 a.m., one hour after McKinstry's shift began. On September 29, 2003, Rexam terminated McKinstry.

On October 23, 2003, McKinstry initiated this action against Rexam, alleging his termination

4

(3:03CV7620)

was racially motivated. Specifically, McKinstry contends that he was following standard policy when he phoned in on September 28, 2003 and that other similarly situated, non-minority employees were allowed to phone in their absences and were not terminated for similar work conduct. McKinstry alleges that his termination was racially motivated and, therefore, in violation of 42 U.S.C. § 1981 and Ohio Rev. Code § 4112, et seq. Rexam has moved for summary judgement on these claims.

### III. Legal Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" Celotex Corp. V. Catrett, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been

5

(3:03CV7620)

made, which contradicts . . . earlier deposition testimony." Reid v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984)); but see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. At 251-52. See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

## IV. Discussion

In any race discrimination suit brought under 42 U.S.C. § 1981, "[t]he same standards governing liability under Title VII apply to §1981 claims." Yarbourgh v. Tower Oldsmobile Inc., 789 F.2d 508, 511 (7th Cir. 1986). Additionally, Ohio courts have held that the Title VII criteria

6

(3:03CV7620)

applicable to § 1981 claims is also applicable to Ohio Rev. Code §4112 et seq. claims. See Plumbers & Steamfitters Joint Apprenticeship Comm'n v. Ohio Civil Rights Comm'n, 66 Ohio St.2d 192 (1981). Therefore, to prevail in the present case, McKinstry must satisfy the Title VII standards outlined in McDonnell Douglas to be successful on both his federal and state law claims.

### A. Prima Facie Elements

Under Title VII and the McDonnell Douglas criteria, McKinstry must establish a prima facie case of racial discrimination. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972). To establish a prima facie case under McDonnell Douglas, McKinstry must demonstrate four things: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) that he was qualified for the position; and (4) he was treated differently than other employees outside the protected class. Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 561 (6th Cir. 2004).

In the present case, McKinstry has clearly established the first three prima facie elements. McKinstry is a member of a protected class and was subject to an adverse employment action. Moreover, McKinstry was clearly qualified for his position. "Qualified in this case means objectively qualified, such as proper training, credentials, etc....[a]s the prima facie case is not intended to be burdensome." McCrory v. Kraft Food Ingredients, Case No. 94-6505, 1996 U.S. App. LEXIS 26305 at *13-14 (6th Cir. Oct. 3, 1996). Objectively, McKinstry was qualified for his position based upon his 22 years of employment and his favorable performance appraisals by Rexam. Moreover,

7

(3:03CV7620)

"court[s] may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis[.]" Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003). Rexam's contention that McKinstry was not qualified based on his performance and attendance record is not appropriate during the prima facie analysis because this is also the legitimate non-discriminatory reason proffered for his termination.

Having established the first three elements of the prima facie case, the final necessary prima facie element is that McKinstry was treated differently than other similarly situated employees outside the protected class. To establish this fourth prima facie element, "[t]he plaintiff must produce evidence which at a minimum established (1) that he was a member of a protected class and (2) that for same or similar conduct he was treated differently than similarly-situated non-minority employees." Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992). Furthermore,

> [i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the comparables are similarly-situated in all respects. Thus, to be deemed similarly-situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Id. (internal citations omitted).

In terms of this fourth element, neither McKinstry nor Rexam has provided sufficient evidence to make a determination of whether the employees alleged to have been treated differently were similarly situated non-minority employees or were actually treated differently. In his deposition and

8

(3:03CV7620)

affidavits, McKinstry contends that a number of similarly situated non-minority employees committed similar or worse infractions at Rexam but were never punished to a similar level.  Rexam, however, contends that these employees were not similarly situated, but it, does not provide information to substantiate these claims.  A determination of whether other non-minority employees were similarly situated to and treated differently than McKinstry is paramount for assessing whether a sufficient prima facie case exists.  Thus summary judgement is not appropriate.

## B. Legitimate Nondiscriminatory Reason for Termination and Pretext

Under the McDonnell Douglas criteria, once a prima facie case is established, the burden shifts back to the defendant to provide a legitimate, non-discriminatory reason for the termination.  If the defendant can assert a legitimate, non-discriminatory reason for termination, the burden then shifts back to the plaintiff to prove defendant's reason for termination was a pretext for racial discrimination.  The plaintiff can establish pretext in three ways, "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (internal quotations omitted)  (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).

In the present case, neither side disputes that the events of September 28, 2003, ultimately lead to McKinstry's termination.  However, both McKinstry and Rexam seriously dispute the surrounding facts, creating a genuine issue of material fact.  Rexam contends McKinstry was fired for not following company policy and for his absence on September 28, 2003.  Rexam argues that McKinstry was

9

(3:03CV7620)

specifically told to contact Hill or Rogers whenever he was going to be absent and that his failure to do so cost them the ability to find a replacement worker. Furthermore, Rexam argues that, while the general employment policy does provide for a call-in number in emergency situations, the number provided in the policy no longer exists and it is not standard, company policy for employees to call in absences. Finally, Rexam argues that McKinstry specifically told Hill he would be present on September 28, 2003, and yet still was absent from work.

McKinstry, on the other hand, argues that he never told Hill he would be into work on September 28, 2003 and that during the September 4, 2003 meeting, he was told he only had to contact Hill or Rogers for medical absences. Further, McKinstry claims that Rexam policy clearly provides for a call-in number for emergency absences and that he was following standard company policy when he phoned his absence. Finally, McKinstry argues that similarly situated, non-minority employees were allowed to utilize the call-in process and that he was not allowed to use the process because of his race.

Together these factual issues present significant discrepancies which seriously effect any possible analysis of whether Rexam's reason for termination was indeed based in fact or was sufficient to motivate termination. Therefore, only once these issues have been established can the legitimacy of McKinstry's pretext argument by assessed. Since genuine issues of material fact exist regarding McKinstry's termination and Rexam's standard company policy, summary judgement is not appropriate.

### B. Public Policy Claims

10

(3:03CV7620)

Beyond the federal and state statutory claims outlined in McKinstry's amended complaint, McKinstry attempts to allege a common law public policy claim similar to that in Greeley v. Miami Valley Maintenance Contrs. Inc., 49 Ohio St. 3d 228 (1990), in his Motion Opposing Summary Judgement. However, despite this attempt, "[a] party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgement." Guiffre v. Local Lodge No. 1124, 1991 U.S. App. Lexis 17698 at *13 (6th Cir. July 24, 1991) (citing Wilburn v. Dial Corp., 724 F. Supp. 521, 525 (W.D. Tenn. 1989)). After seeing McKinstry's Motion Opposing Summary Judgement and Rexam's reply, this court ordered McKinstry to file an amended complaint in order to clear up any ambiguity over the causes of action at issue. In the amended complaint filed May 5, 2005 (Doc. No. 35), McKinstry did not allege any common law public policy claims. Therefore, since McKinstry did not include these public policy arguments in a cause of action in the amended complaint, they shall not be allowed as a method of recovery in the present case.

### C. Punitive Damages

For claims brought pursuant to 42 U.S.C. § 1981 and Ohio Rev. Code § 4112 et seq., punitive damages are available. To receive punitive damages under either of these provisions, however, certain criteria must be established. For 42 U.S.C. § 1981 claims, a plaintiff may recover punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §1981a(b) (2005). Additionally, for Ohio Rev. Code § 4112 et seq. claims, punitive damages are awarded only upon a finding of actual malice. Moskovitz v.

11

(3:03CV7620)

Mt. Sinai Med. Ctr., 69 Ohio St. 3d 638, 652 (1994).

Due to the specific criteria necessary to determine whether punitive damages are appropriate, summary judgement is denied. Only after sufficiently reviewing the evidence and conduct of Rexam can a legal judgement of malice or reckless indifference concerning Rexam's actions towards McKinstry be made.

### V. Conclusion

For the foregoing reasons, Defendant Rexam Can Company's Motion for Summary Judgment (Doc. No. 23) is DENIED.

IT IS SO ORDERED.

| | |
|---|---|
|  JUNE 6, 2005  |  */s/ David D. Dowd Jr.*  |
| Date | David D. Dowd, Jr.<br>U.S. District Judge |